A05A1559. GIDDENS v. THE STATE.
(623 SE2d 204)

RUFFIN, Chief Judge.

Leonard Giddens shot and killed Winford McGatha during an altercation. At trial, Giddens admitted that he shot McGatha, but claimed that he did so in self-defense. The jury acquitted Giddens of

---

malice murder and felony murder and found him guilty of aggravated assault. He moved for a new trial, arguing that: (1) the State failed to prove his guilt beyond a reasonable doubt; (2) the trial court erred in instructing the jury; and (3) he received ineffective assistance of counsel. The trial court denied Giddens' motion, and for reasons that follow, we affirm.

1. Giddens argues that there was insufficient evidence to support his conviction. On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict and do not presume that the defendant is innocent.[1] Moreover, we do not weigh the evidence or determine witness credibility.[2] Viewed in this manner, the evidence shows that on March 31, 2003, Giddens and McGatha were both driving tractor-trailers on Highway 16 in Carroll County. When Giddens attempted to pass McGatha, McGatha swerved in front of him. Giddens saw McGatha talking on a cell phone. He then called McGatha on the CB radio and told him to "put that m___ f___ cell phone down before you kill somebody."

Sandy Elrod was speaking to McGatha on the cell phone and overheard Giddens' comments on the CB radio. She heard the words "M F"er, if you do not pull your truck over, I'll pull it over for you. I'm going to kill you." She testified that McGatha did not respond to Giddens, but told her that "[s]omebody's fixing to get killed." Although Elrod stayed on the cell phone, she heard no further conversation between Giddens and McGatha. Giddens contends, however, that the verbal exchange continued, and that McGatha used a racial epithet and threatened him.

Both truck drivers stopped on the side of Highway 16. McGatha exited his truck carrying a metal rod, and Giddens exited his truck with a shotgun. When they were within five to ten feet of each other, McGatha raised the rod, and Giddens shot him in the stomach. McGatha stumbled and attempted to get up, and Giddens shot him again, grazing his head. Giddens then returned to his truck and called his wife and 911. He cooperated with police at the scene and made a statement in which he admitted to the shooting. McGatha subsequently died from the gunshot wounds.

Giddens' only defense at trial was that he acted in self-defense. Under Georgia law,

> a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent

---

[1] See *Berry v. State*, 274 Ga. App. 366, 367 (1) (618 SE2d 72) (2005).
[2] See id.

death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.[3]

However, use of deadly force is not justified when a person either "[i]nitially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant" or "[w]as the aggressor or was engaged in a combat by agreement unless he withdraws from the encounter."[4] If a defendant presents evidence that he was justified in using deadly force, the State must disprove the defense beyond a reasonable doubt.[5] It is for the jury to decide "[w]hether or not the evidence shows that a person had a reasonable belief that it was necessary to use deadly force to prevent death or great bodily injury to himself."[6]

In this case, there was evidence from which the jury could determine that Giddens did not have a reasonable belief that it was necessary to shoot McGatha to protect himself.[7] The jury could have believed Elrod's testimony that McGatha made no threats to Giddens, and thus concluded that Giddens instigated a confrontation with McGatha and used the confrontation as an excuse to shoot him.[8] Or the jury could have found that the two were engaged in mutual combat from which Giddens did not withdraw.[9] Either of these scenarios would negate Giddens' self-defense claims.[10] Consequently, we affirm the trial court's denial of Giddens' motion for a new trial on sufficiency of the evidence.[11]

2. Giddens alleges that the trial court erred in failing to define assault when it charged the jury on aggravated assault. The trial court charged the jury as follows:

Under the laws of Georgia aggravated assault is a felony which is defined as follows: "[a] person commits the offense of aggravated assault when that person assaults another person with the intent to murder." The attempt to murder is a material element of aggravated assault as charged in this case. And I charge you that a person commits the offense of

[3] OCGA § 16-3-21 (a).

[4] OCGA § 16-3-21 (b) (1), (3).

[5] See *Brown v. State*, 242 Ga. App. 106, 107 (1) (528 SE2d 868) (2000).

[6] Id.; see also *Young v. State*, 229 Ga. App. 497, 499 (494 SE2d 226) (1997).

[7] See *Aldridge v. State*, 267 Ga. App. 489, 490 (600 SE2d 439) (2004); *Daniley v. State*, 274 Ga. 474, 475 (1) (554 SE2d 483) (2001).

[8] See *Aldridge*, supra.

[9] See *Roberts v. State*, 215 Ga. App. 881, 883 (452 SE2d 570) (1994).

[10] See *Williams v. State*, 268 Ga. App. 384, 385-386 (1) (a) (601 SE2d 833) (2004); *Eady v. State*, 256 Ga. App. 696, 697 (1) (569 SE2d 603) (2002).

[11] See id.; *Andrews v. State*, 267 Ga. 473, 474-475 (1) (480 SE2d 29) (1997).

aggravated assault when that person assaults another person with a deadly weapon. And I charge you that a firearm when used as such is a deadly weapon as a matter of law.

We will not reverse a conviction on the basis of an erroneous jury instruction unless the instruction, viewed as part of the whole charge, is harmful.[12] Pretermitting whether a charge on the elements of aggravated assault should include the statutory definition of simple assault, we find no harm.[13] Giddens does not dispute that he shot McGatha with a firearm, but claims that he acted in self-defense. Thus any error in the charge would not have affected the outcome of the case, as Giddens admitted to actions which would constitute aggravated assault unless the jury found he acted in self-defense.[14] Thus, we affirm the trial court's denial of the motion for new trial on this ground as well.

3. Giddens contends that his counsel rendered ineffective assistance because he: (a) did not spend enough time with Giddens before trial; (b) did not adequately inform Giddens of his right to testify, or call him as a witness; and (c) gave up the right to begin and end closing argument by introducing irrelevant evidence. In order to show ineffective assistance of counsel, Giddens "must prove that counsel's performance was deficient and that the deficient performance so prejudiced [Giddens] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[15] We will affirm a trial court's ruling on a claim of ineffective assistance of counsel unless the ruling is clearly erroneous.[16]

(a) Giddens alleges that his self-defense claim would have succeeded if trial counsel had spent more time before trial reviewing the State's discovery with him. Giddens' trial counsel was a criminal defense attorney with 28 years of experience. He testified that he spent a sufficient amount of time preparing for Giddens' trial. He met with Giddens' family members several times, he and his investigator interviewed numerous witnesses, and he and an expert witness visited the crime scene to evaluate the State's version of events. Giddens testified that he met with trial counsel on more than one

---

[12] See *Drake v. State*, 272 Ga. 797, 799 (3) (537 SE2d 336) (2000).

[13] See *White v. State*, 267 Ga. 523, 524 (5) (481 SE2d 804) (1997); *Sutton v. State*, 245 Ga. 192, 193 (2) (264 SE2d 184) (1980); but see *Chase v. State*, 277 Ga. 636, 639-640 (2) (592 SE2d 656) (2004).

[14] See *Emmons v. State*, 142 Ga. App. 553, 554 (1) (236 SE2d 536) (1977); *Peterkin v. State*, 147 Ga. App. 437, 439 (1) (249 SE2d 152) (1978).

[15] *Davis v. State*, 267 Ga. App. 245, 245-246 (1) (599 SE2d 237) (2004).

[16] See id. at 246; *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

occasion, but that counsel only met with him for about an hour to go over the State's discovery.

"[T]here exists no magic amount of time which counsel must spend in actual conference with his client."[17] And counsel here testified that he spent a significant amount of time preparing for trial and that he reviewed the State's discovery with Giddens. Under the circumstances, Giddens has not met his burden of showing how his "counsel's handling of his case was outside the bounds of reasonable professional conduct."[18] Moreover, Giddens offers no explanation of "how additional communications with his lawyer would have changed the outcome of his trial."[19] The trial court properly denied his motion for new trial on this ground.[20]

(b) Giddens contends that trial counsel did not adequately advise him of his right to testify. However, this contention is belied by the record. Trial counsel testified that, both before and at trial, he and Giddens discussed whether Giddens should testify. Trial counsel ultimately advised Giddens that he should not subject himself to possible attack on cross-examination, as he had made a complete statement to police about the events which was played for the jury. Giddens accepted this advice. We will not second-guess tactical decisions made at trial.[21] Because counsel made a reasoned recommendation to Giddens, which Giddens accepted, the trial court did not err in denying this claim.[22]

(c) Giddens asserts that trial counsel was ineffective by introducing irrelevant evidence, which resulted in his losing the right to final closing argument. At the motion for new trial, counsel testified that "it was a close call whether to put [the evidence] in or not put it in," but that he decided to introduce it because it was "critical" to counter an argument made by the State. The decision whether to introduce evidence, and thus lose the right to make the final closing argument, is a tactical one.[23] And "[t]rial tactics, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel to have been ineffective."[24] We will only find counsel ineffective if his decision is "so patently unreasonable that no

---

[17] (Punctuation omitted.) *Harris v. State*, 279 Ga. 304, 307 (3) (b) (612 SE2d 789) (2005).

[18] *Mitchell v. State*, 279 Ga. 158, 160 (2) (611 SE2d 15) (2005).

[19] (Punctuation omitted.) *Henry v. State*, 279 Ga. 615, 616 (3) (619 SE2d 609) (2005).

[20] See *Kimmons v. State*, 267 Ga. App. 790, 792 (2) (a) (600 SE2d 783) (2004).

[21] See *Nihart v. State*, 227 Ga. App. 272, 274 (1) (a) (488 SE2d 740) (1997).

[22] See *Randolph v. State*, 225 Ga. App. 324, 325 (484 SE2d 1) (1997).

[23] See *Washington v. State*, 276 Ga. 655, 659 (3) (c) (581 SE2d 518) (2003).

[24] (Punctuation omitted.) *Duvall v. State*, 273 Ga. App. 143, 148 (3) (h) (614 SE2d 234) (2005).

competent attorney would have chosen [it]."[25] Because trial counsel had a reasonable explanation for his decision to introduce the evidence, and because Giddens gives no basis for concluding that the trial would have had a different result based on the order of closing argument, Giddens has not shown that his trial counsel was ineffective.[26] Accordingly, we affirm his conviction.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 14, 2005.

*Kevin W. Drummond*, for appellant.
*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.

---

[25] (Punctuation omitted.) Id.

[26] See *Thomas v. State*, 273 Ga. App. 357, 362 (4) (a) (615 SE2d 196) (2005).